UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANDREW ORKIN,

                           Plaintiff,


               -against-                                                    09 Civ. 10013 (LAK)


THE SWISS CONFEDERATION, et al.,

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION

                    Appearances:

                                   Richard A. Altman
                                   *Attorney for Plaintiff*


                                   Laurie E. Foster
                                   Matthew R. Kalinowski
                                   MORGAN, LEWIS & BOCKIUS LLP
                                   *Attorneys for Defendants*



LEWIS A. KAPLAN, *District Judge.*

               Plaintiff Andrew Orkin sues to recover possession of a Vincent van Gogh drawing

that his great-grandmother allegedly sold "under duress during the Nazi era in Germany for a

fraction of its fair value."[1]  The Court assumes familiarity with the evidence, pleadings, and its prior

---

[1]

               Amended complaint ("Cpt.") ¶ 1.

               In a recent filing, plaintiff attached what purports to be a "Second Amended Complaint."
               DI 26 Ex. 1.  The Court has no record of such a document previously having been filed and,
               under FED. R. CIV. P. 15(a), plaintiff could not amend the complaint further without the
               Court's leave or defendants' written consent – the former of which he did not seek, and the

2

opinion.[2]  Defendants move to dismiss for lack of subject matter jurisdiction.[3]

*Facts*

I.      *The Drawing*

The pertinent allegations are as follows.

Plaintiff's great-grandmother, Margarethe Mauthner, was a German of Jewish descent born in 1863.[4]  In 1906, she purchased *Les Saintes-Maries de la Mar*, a Van Gogh pen-and-ink drawing.[5]  In 1933, she sold the drawing to Swiss art collector Oskar Reinhart for 8,000 Reichsmarks to help fund her family's escape from the Nazis' persecution of German Jews.[6]  Mauthner's family fled to South Africa as early as 1933.  She followed in 1939.[7]

In or around 1945, Reinhart created the Foundation as a non-profit organization and

---

[2]

latter of which he does not appear to have.  In any event, a comparison of the amended complaint and purported "Second Amended Complaint" reveals only several minor modifications that are wholly inconsequential for purposes of this decision.

[2]

*See Orkin v. Swiss Confederation*, No. 09 Civ. 10013 (LAK), 2011 WL 167840 (S.D.N.Y. Jan. 13, 2011) (hereinafter "*Orkin I*").

[3]

The three "entities" are described in greater detail in *Orkin I*, 2011 WL 167840, at *1 & n.1.

[4]

Cpt. ¶ 37.

[5]

*Id.* ¶¶ 40-41.

[6]

*Id.* ¶¶ 44, 47-48, 62, 66-70.

[7]

*Id.* at 8.

3

donated part of his art collection to it, but not the Van Gogh drawing.[8]  The Foundation has

displayed those works since 1951.[9]  Upon Reinhart's death in 1965, the rest of his collection –

including the Van Gogh drawing – passed to the Swiss Confederation as part of a bequest by

Reinhart.[10]  The Swiss Confederation has owned the drawing ever since and, for many years,

displayed it at a museum owned by it and referred to here as the Collection.[11]


II.    *This Action*

In December 2009, plaintiff brought this action to recover the drawing from

whichever of the defendant Swiss entities acquired it from Reinhart.

The amended complaint premises subject matter jurisdiction on the Foreign

Sovereign Immunities Act ("FSIA").  It alleges that the Swiss Confederation is a foreign state and

that the Collection and Foundation are among its agencies and instrumentalities.[12]  It asserts also –

---

[8]

Wohlwend Decl. [DI 15 Ex. 1] ("Wohlwend Decl.") ¶¶ 2-3.

The amended complaint alleges that this donation was made to the city of Winterthur, Switzerland, in 1940.  Cpt. ¶ 55.  However, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2 1006, 1011 (2d Cir. 1986)).  Plaintiff has not challenged defendants' evidence to the effect noted in the text. *See Orkin*, 2011 WL 167840, at *2-3.

[9]

Wohlwend Decl. ¶ 6.

[10]

Cpt. ¶¶ 56-57; *see also* Staub Decl. [DI 15 Ex. 2] ("Staub Decl.") ¶ 3.

[11]

Staub Decl. ¶¶ 6, 13.

The Collection in fact is not a legal entity, but part of the Swiss Confederation. *Id.* ¶ 12.

[12]

Cpt. ¶¶ 6, 11-12.

and, as will be seen, inconsistently – that the Alien Tort Statute ("ATS") is an alternate source of subject matter jurisdiction.

       The amended complaint evidences much confusion as to how the three alleged defendants are related and which one owns or controls the drawing.[13]  Plaintiff's theory of recovery as to each, however, is the same:  Reinhart allegedly took advantage of Mauthner's plight and desperation as a Jew in Nazi Germany to purchase the drawing at an artificially low price[14] and, years later, donated or bequeathed the drawing to one of the defendants.  As Reinhart's purchase was invalid, the theory goes, so too was receipt and retention of the drawing.

III.    *The Foundation*

       The Foundation never possessed the drawing.[15]  It therefore would not be a proper defendant to this action, quite apart from questions of jurisdiction.[16]  Nevertheless, in a declaration

---

[13]

    *See, e.g.*, *id.* ¶¶ 3, 55.

[14]

    *Id.* ¶¶ 60-61.

[15]

    The amended complaint alleges that Reinhart donated the drawing to the Swiss Confederation.  *Id.* ¶¶ 56-57.  It speculates also that "[t]he [d]rawing is currently part of the collection of the defendants [the Foundation] *and/or* [the Collection]."  *Id.* ¶ 3 (emphasis added).  In fact, however, the Foundation never has had the drawing.  *See* Staub Decl. ¶ 13.

[16]

    *See Orkin I*, 2011 WL 167840, at *2.

    Plaintiff postulates that "all parties to this case [must] remain as defendants" because "[t]he Swiss Confederation claims to be the owner, the [d]rawing is actually in the possession of the Collection, [and] the . . . Foundation has been *in some sense merged* with the Collection."  Pl. Mem. [DI 20] ("Pl. Mem.") at 20 (emphasis added).  But "[t]o state a plausible claim to relief, a complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Vodopia v. Koninklijke Philips Elecs., N.V.*, No. 09-4767-cv, 2010 WL 4186469, at *2 (2d Cir. Oct. 25, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  There is no basis for the assertion that the Foundation has merged with the

purportedly submitted pursuant to FED. R. CIV. P. 56(d), formerly Rule 56(f), plaintiff asserts that discovery is necessary "to ascertain the accuracy of" defendants' evidence on this issue and "to enable [him] to uncover the extent of the Foundation's involvement" in the pertinent events.[17]  He has shown no basis for such discovery on this record.[18]

    In any case, there is no need to resolve this issue because, in the last analysis, the Court would not have subject matter jurisdiction over the claims against the Foundation even if the Foundation were in possession of the drawing.

*Discussion*

---

Collection.  And if it had, the Collection – i.e., the Swiss Confederation – would be the appropriate defendant.

[17]

DI 26 ¶¶ 5, 16.

Plaintiff mischaracterizes defendants' evidence as suggesting that the Foundation housed the drawing while the Collection was closed for renovations. *Id.* ¶ 14.  On the contrary, the pertinent declaration states quite clearly that, "[f]or the duration of the renovations, the [d]rawing is being stored at a secure warehouse," but that certain *other* pieces of art from the Collection temporarily were displayed with the Foundation.  Staub Decl. ¶ 13.

[18]

Although Rule 56(d) relates to affidavits for purposes of discovery on summary judgment motions, its terms apply in all relevant respects where, as here, defendants offer evidence in support of a challenge to subject matter jurisdiction.  *See Orkin I*, 2011 WL 167840, at *2. Plaintiff's assertion does not satisfy its requirements.  *See, e.g.*, *Gurary v. Winehouse*, 190 F.3d 37, 43-44 (2d Cir. 1999).

*See also Waldron v. Cities Service Co.*, 361 F.2d 671, 673 (2d Cir. 1966) (Rule 56(d) discovery properly denied where "plaintiff sought to engage in still another 'fishing expedition' in the hope that he could come up with some tenable cause of action."), *aff'd*, *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, *rehearing denied*, 393 U.S. 901 (1968); *Smith v. Keane*, No. 96 Civ. 1629 (JGK), 1998 WL 146225, at *7 (S.D.N.Y. Mar. 25, 1998) (Rule 56(d) "is not a device for a fishing expedition . . . on the mere hope that further evidence will develop."); *accord Estevez-Yalcin v. Children's Village*, 331 F. Supp.2d 170, 180 (S.D.N.Y. 2004); *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs., Inc.*, 725 F. Supp. 669, 680 (N.D.N.Y. 1989).

An action or claim must be dismissed for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate" it.[19]  Plaintiff bears the burden of establishing that the Court has subject matter jurisdiction.[20]  Although he may satisfy that burden, prior to discovery, with legally sufficient allegations,[21] the Court is not bound by conclusory assertions of fact or law.[22]

## I.     The Foreign Sovereign Immunities Act

The Court assumes *arguendo*, as plaintiff alleges, that the Swiss Confederation is a foreign state and that the Collection and Foundation are among its agencies and instrumentalities as those terms are used in the FSIA.[23]  On those assumptions, the FSIA, which "codifies several exceptions to the long-established doctrine of foreign sovereign immunity,"[24] is the only possible

---

[19]

*Makarova*, 201 F.3d at 113 (citing FED. R. CIV. P. 12(b)(1)).

[20]

*Id.* at 113.

[21]

*See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990).

Defendants have submitted declarations challenging subject matter jurisdiction.  The issues raised by these declarations include, *inter alia*, the location of the drawing and whether the Foundation and Collection qualify as Swiss agencies or instrumentalities for purposes of the FSIA.  *See generally* Wohlwend Decl.; Staub Decl.  Plaintiff does not contest any of this. Nonetheless, these motions are decided on the legal sufficiency of plaintiff's jurisdictional allegations.  In consequence, defendants' declarations are immaterial here.

[22]

*Ashcroft v. Iqbal*, ___ U.S. ____, 129 S. Ct. 1937, 1950 (2009).

[23]

*See* Cpt. ¶¶ 6, 8, 11.

[24]

*Garb v. Republic of Poland*, 440 F.3d 579, 581 (2d Cir. 2006).

7

source of subject matter jurisdiction over these claims.

Plaintiff contends that the claims come within the "takings" exception to foreign sovereign immunity articulated in 28 U.S.C. § 1605(a)(3).[25] "To establish subject matter jurisdiction pursuant to the 'takings' exception of the FSIA, a plaintiff must demonstrate each of four elements:

"(1)      that rights in property are at issue;

"(2)      that the property was 'taken';

"(3)      that the taking was in violation of international law; and either

"(4)(a) 'that property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state,' or

"(4)(b) 'that property . . . is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]'"[26]

As used in Section 1605(a)(3), "the term 'taken' . . . refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation."[27]   In consequence, "takings" jurisdiction exists only where the property at issue passed in the first instance from the plaintiff – or, as here, the plaintiff's predecessor – to a sovereign or to some person or entity acting on a sovereign's behalf.   Here, however, the drawing passed from Mauthner to Reinhart.   Plaintiff does not allege that Reinhart acted in any capacity other than as a private individual.

Plaintiff ignores the significance of this fact.   He argues only that it is "irrelevant that

---

[25]      *See* Pl. Mem. at 6.

[26]      *Garb*, 440 F.3d at 588 (quoting 28 U.S.C. § 1605(a)(3)).

[27]      *Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000).

the defendants here were not the ones who acquired the [d]rawing in violation of law."[28]  But the

few decisions supporting that proposition, which in any event are not binding on this Court, involved

suits against sovereigns for property initially taken or expropriated by *other sovereigns*.[29]  As this

case involves an acquisition by a private individual, there is no subject matter jurisdiction under the

FSIA's "takings" clause.


II.     *The Alien Tort Statute*

As stated, the FSIA is the only source of subject matter jurisdiction over claims

against foreign sovereigns and their agencies and instrumentalities.  Given plaintiff's unequivocal

assertions that each defendant is a foreign sovereign or an agency or instrumentality thereof,[30] that

is dispositive.  Nonetheless, plaintiff attempts to preserve his claims against the Foundation by

asserting, contrary to his own allegations, that the Foundation is a private entity.[31]  But the ATS

---

28

Pl. Mem. at 19.

29

*See Cassirer v. Kingdom of Spain*, 616 F.3d 1019 (9th Cir. 2010) (allowing suit against Spain where initial expropriation was by Germany); *Agudas Chasidei Chabad of United States v. Russian Federation*, 466 F. Supp.2d 6 (D.D.C. 2006) (allowing suit against Russia where initial expropriations were by Russia and Germany), *rev'd in part*, 528 F.3d 934 (D.C. Cir. 2008); *Altmann v. Republic of Austria*, 142 F. Supp.2d 1187 (C.D. Cal. 2001) (allowing suit against Austria where initial expropriation was by Germany, and stating that "[t]he foreign state against whom a claim is made need not be *the sovereign* that expropriated the property at issue, *id.* at 1202 (emphasis added)), *aff'd*, 317 F.3d 954 (9th Cir. 2002), *aff'd on other grounds*, 541 U.S. 677 (2004).

30

*See* Cpt. ¶¶ 6, 11-12.

31

*See Orkin I*, 2011 WL 167840, at *3 (ATS applies only to claims against non-governmental actors).

9

would have no bearing here even if it were.[32]

The ATS applies only to "(1) tort actions, (2) brought by aliens (only), (3) for violations of the law of nations (also called 'customary international law')."[33]  As stated in *Orkin I*, "plaintiff has alleged no cognizable tort against the Foundation."[34]  Plaintiff incorrectly argues to the contrary.[35]  Even if he were right, however, this Court still would lack jurisdiction.

For purposes of the ATS, the violated international law must be a "'specific, universal, and obligatory' norm" that has "attained a discernible, . . . universal, acceptance among nations of the world."[36]  One cannot cogently cast the Foundation as "'*hostis humani generis*, an

---

[32]

    Indeed, the evidence indicates that the Foundation is a private, non-governmental entity.  *See Orkin I*, 2011 WL 167840, at *2.  The Court ignores for the moment that the evidence indicates also that the Foundation never possessed or controlled the drawing.

[33]

    *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 116 (2d Cir. 2010) (internal quotation marks omitted), *rehearing denied*, ___ F.3d ____, 2011 WL 338048 (2d Cir. 2011); *see also* 28 U.S.C. § 1350.

[34]

    *Orkin I*, 2011 WL 167840, at *3.

[35]

    Plaintiff contends that "the Fifth and Sixth Claims in the Second Amended Complaint . . . allege damages . . . for violations of international law, and unjust enrichment, both of which are torts."  DI 26 at 3 n.2.  "[U]njust enrichment[, however,] is not a tort action" at all, *see Pro Bono Inv., Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2008 WL 4755760, at *20 (S.D.N.Y. Oct. 29, 2008), but an equitable quasi-contract doctrine, 26 WILLISTON ON CONTRACTS § 68:5 (4th ed. 2010).  Nor does a blanket assertion of "violations of international law" suffice.  As noted above, the requirements of a violation of international law and a tort are two separate elements under the ATS.  Plaintiff's conclusory assertion of the former likely does not even satisfy that element, let alone the latter.

    The bigger point, of course, is not plaintiff's characterization of his claims.  It is that the allegations do not make out a tort claim against the Foundation.

[36]

    *Kiobel*, 621 F.3d at 118 n.12 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004)); *see also Kiobel*, 621 F.3d at 120 (citing "war crimes, crimes against humanity (such as genocide), and torture" as examples of the "limited number of international crimes" implicating the ATS).

10

enemy of all mankind'" guilty of one of the "'handful of heinous actions'" that meets this standard.[37] Like the other defendants, it is alleged to have done nothing more than accept a bequest or donation of artwork from a collector who purchased it, however opportunistically, many years prior.[38] Plaintiff has not demonstrated that passive receipt of an item acquired in the circumstances of the Mauthner-Reinhart transaction could amount to a violation of any international (or, for that matter, American) law, let alone the subset of laws implicating the ATS.

*Conclusion*

Defendants' motions [DI 14, 16] are granted and the amended complaint is dismissed for lack of subject matter jurisdiction.  The Clerk shall enter judgment and close the case.

SO ORDERED.

Dated:        March 11, 2011

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[37]

*Sosa*, 542 U.S. at 732 (quoting *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 781 (D.C. Cir. 1984), *cert. denied*, 470 U.S. 1003 (1985); *Filartiga v. Pena-Irala*, 630 F.2d 876, 890 (2d Cir. 1980)).

[38]

*See Orkin*, 2011 WL 167840, at *2 (citing Cpt. ¶¶ 55-73).

In arguing that defendants have violated customary international law, plaintiff repeatedly points to the universal condemnation of "the crimes of the Nazi regimes." Pl. Mem. at 22; *see also id.* at 23.  The amended complaint does not allege, however, that the defendants – or even Reinhart, for that matter – engaged in such crimes.  Instead, the events at issue here are several degrees removed therefrom – this case involves the receipt of an item that another individual purchased under allegedly favorable terms stemming from those crimes.